IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MERVE DEMIRER,<br><br>                     Plaintiff,<br><br>-against-<br><br>PIPING ROCK CLUB and<br>RONALDO THOMPSON,<br><br>                     Defendants. | Case No.  23 Civ. 121 |

**COMPLAINT**

Plaintiff Merve Demirer, by and through her attorneys, Kessler Matura, P.C., complaining of Piping Rock Club ("Piping Rock" and the "Club") and Ronaldo Thompson, individually ("Thompson," together with Piping Rock, "Defendants"), alleges as follows:

**INTRODUCTION**

1. More than two weeks had passed since Merve Demirer was raped by Ronaldo Thompson at Piping Rock Club.  As she set foot back at the Club, she realized that, while her world had been shattered, nothing at Piping Rock had changed.  Nothing.

2. Ms. Demirer and Mr. Thompson both worked and resided at the Club.  But, for thirteen days after Mr. Thompson had sexually assaulted Ms. Demirer, she had been hospitalized with deep psychiatric trauma.  Despite having direct knowledge of the sexual assault – Piping Rock's Human Resources Director, Robert Gasperetti, had driven Ms. Demirer to the hospital after she disclosed the rape to him – the Club had not conducted any investigation or taken any action against Mr. Thompson.

3. With Ms. Demirer's return, Piping Rock's Assistant General Manager, Rachel Kramer, explained that the Club did not take any action against Mr. Thompson because both Ms.

Demirer and Mr. Thompson came to the Club through immigration visas, so the Club had to "treat everyone fairly." The Club allowed Mr. Thompson to remain in his employment, without discipline, effectively condoning his conduct. With her residence at Piping Rock, Ms. Demirer faced the constant retraumatization of living in the same place as and repeatedly seeing her rapist.

## NATURE OF THE CLAIMS

4. Ms. Demirer brings this action to redress the hostile work environment and unlawful discriminatory treatment due to her sex, as well as retaliation for opposing the unlawful discrimination, in violation of the New York State Human Rights Law, N.Y. Executive Law § 290 *et seq.* ("NYSHRL").

5. Ms. Demirer further brings this action to redress violations of the common law, including intentional infliction of emotional distress, and assault and battery.

## JURISDICTION & VENUE

6. The Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(2) because it is an action where Defendants are a citizen of a State and a citizen of a foreign state, respectively, and Plaintiff is a citizen of the country of Turkey, with an amount in controversy exceeding $75,000, exclusive of interest and costs.

7. Venue is proper within this Judicial District pursuant to 28 U.S.C. § 1391 because all or a substantial part of the events or omissions giving rise to the claims herein occurred in the Eastern District of New York.

## THE PARTIES

**Plaintiff Merve Demirer**

8. Plaintiff Merve Demirer is a citizen of Turkey.

9. At all times relevant, Plaintiff was an "employee" of Defendant Piping Rock within the meaning of all applicable statutes.

**Defendant Piping Rock Club**

10. At all times relevant to the Complaint, Defendant Piping Rock Club was and still is a not-for-profit corporation organized and existing pursuant to the laws of the State of New York.

11. Defendant Piping Rock Club is a country club located in Locust Valley, New York.

12. At all times hereinafter mentioned, Defendant Piping Rock Club was and still is an "employer" within the meaning of all applicable statutes.

**Defendant Ronaldo Thompson**

13. Upon information and belief, Defendant Ronaldo Thompson is a citizen of the country of Jamaica.

14. At all times relevant to the Complaint, Thompson was employed by Piping Rock Club as a cook.

## FACTS

15. Ms. Demirer came to Piping Rock Club through an international exchange program, which allows foreign nationals to work in a training capacity at an employer within the United States.

16. As part of the program, Ms. Demirer could receive training in the hospitality industry. In addition, she received an hourly "stipend" from Piping Rock of $15 per hour.

17. Ms. Demirer started at Piping Rock Club on June 15, 2022. The Club first assigned her as a waitress in the Club's beach area.

18. Toward the end of July, the Club shifted Ms. Demirer to work in housekeeping in the main Club building.

19. Like many other Piping Rock employees, Ms. Demirer resided in the Club's staff housing.

20. It was not until Piping Rock moved Ms. Demirer from the Club's beach area to the main building that she first came into contact with Ronaldo Thompson.

21. Mr. Thompson, who was working as a cook, also resided in Club staff housing.

22. In the afternoon of July 28, 2022, Mr. Thompson sent a message to Ms. Demirer telling her "I need to meet with you," "it's urgent."

23. Not knowing what Mr. Thompson wanted to discuss, Ms. Demirer suggested that they meet in the staff housing's living room, kitchen, or garden. However, Mr. Thompson insisted that they meet in her room.

24. A few minutes later, Mr. Thompson arrived at Ms. Demirer's door. Still unclear as to why Mr. Thompson wanted to talk with her, Ms. Demirer allowed him in.

25. Upon entering the room, Mr. Thompson began making suggestive comments to Ms. Demirer, such as "you are very beautiful . . . your eyes are beautiful . . . you're very mature . . . you're not like the others."

26. Feeling uncomfortable, Ms. Demirer asked Mr. Thompson to leave and gestured to the door. Ms. Demirer also indicated that her boyfriend was coming.

27. In response, Mr. Thompson said "we have time." He then sat down on Ms. Demirer's bed.

28. Ms. Demirer again motioned to the door and asked Mr. Thompson to leave.

29. However, instead of leaving, Mr. Thompson stood up and began to grope Ms. Demirer. Mr. Thompson aggressively held Ms. Demirer as she tried to push him away. Mr. Thompson then pushed Ms. Demirer onto the bed and moved on top of her. Ms. Demirer hit her head on the bedframe as she fell. Immediately, Ms. Demirer started to scream, but Mr. Thompson covered her mouth with his hand.

30. While covering Ms. Demirer's mouth, Mr. Thompson ripped off her pants and underwear. Mr. Thompson then held Ms. Demirer down and raped her.

31. For several days following the rape, Ms. Demirer tried to pretend that she was okay. However, she was forced to see Mr. Thompson while working. He would invariably act as if nothing happened, saying "hi" and even touching Ms. Demirer's back. Mr. Thompson even texted Ms. Demirer on several occasions with statements like "how are you doing sweety" and pleading that Ms. Demirer not divulge anything to his wife, who also lived and worked at the Club.

32. Ms. Demirer's emotional distress only heightened over the next few days as she repeatedly saw Mr. Thompson in the Club. Ms. Demirer could barely eat and began experiencing suicidal ideation. Deeply distressed, Ms. Demirer disclosed the rape to her roommate, who in turn told Ms. Demirer that she needed to speak with Club management.

33. On or around August 2, 2022, Ms. Demirer went to speak with the Club's Human Resources Director, Robert Gasperetti. Ms. Demirer explained to Mr. Gasperetti that Mr. Thompson had raped her.

34. After learning of the rape, Mr. Gasperetti drove Ms. Demirer to a nearby emergency room.

35. While at the emergency room, Ms. Demirer exhibited demonstrable psychiatric distress. Instead of returning to the Club after the emergency room visit, Ms. Demirer was admitted into Zucker Hillside Hospital, a residential psychiatric treatment facility.

36. At Zucker Hillside Hospital, Ms. Demirer demonstrated symptoms of post-traumatic stress and depression. Due to her psychiatric condition, she stayed at the treatment facility for 13 days.

37. On August 15, 2022, Zucker Hillside Hospital discharged Ms. Demirer.

38. As her residence was at Piping Rock, Ms. Demirer returned to the Club, believing she would be able to continue her recovery and return to work.

39. Having reported what occurred to the Club's management, Ms. Demirer was utterly shocked when she returned. Mr. Thompson was not only still living and working on the premises, but Piping Rock had taken no action against him. Further, Piping Rock did not conduct any investigation of Mr. Thompson's conduct. Piping Rock decided to act as though nothing had happened.

40. The Club not only condoned the sexual assault, it retaliated against Ms. Demirer for reporting and then returning back to her residence and workplace.

41. Back living at the Club, Ms. Demirer was forced to see Mr. Thompson repeatedly. Instead of recovering and returning to work, Ms. Demirer lived in constant fear of seeing her rapist. Instead of recovering and returning to work, Ms. Demirer was terrorized by the prospect that her rapist could return to her room at any time. Instead of recovering and returning to work, Ms. Demirer faced constant retraumatization.

42. Ms. Demirer complained about the situation to the Assistant General Manager, Rachel Kramer. Ms. Kramer told Ms. Demirer that the Club would not take any action until the

police investigated. Instead, the Club sought to retaliate against Ms. Demirer, thwarting any possibility of recovering and returning to work. Ms. Kramer suggested that Ms. Demirer "should just go back to Turkey," instead of taking any action to indicate that the Club would help Ms. Demirer get back to her job. Ms. Kramer explained the Club's position: "since you're here on a visa and so is he, we have to be fair to everyone." Ms. Kramer then offered for the Club to pay for Ms. Demirer's plane ticket home.

43. On September 1, 2022, Mr. Gasperetti wrote a letter to Ms. Demirer stating that Piping Rock had been informed by CETUSA, the exchange program administrator, that the "Trainee program is subject to termination due to the lapse in training over 30 days." More than two weeks had passed since Ms. Demirer's return from the hospital.

44. After making any recovery and return to work nearly impossible by virtue of their inaction, the Club then seized upon Ms. Demirer's corresponding failure to return to work to terminate her employment. The Club's General Manager, Andy Hauser, and Mr. Gasperetti offered to purchase her flight ticket back to her home country.

## FIRST CAUSE OF ACTION
**Hostile Work Environment, Sexual Harassment, and Gender Discrimination
Violation of the NYSHRL**
*Against Defendants Piping Rock Club and Ronaldo Thompson*

45. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

46. By the acts and practices described above, Defendants created, perpetuated, fostered, condoned, accepted, and/or ratified a hostile work environment for Plaintiff because of her sex in violation of the NYSHRL.

47. Defendants, through their own conduct including that of their agents, managers, supervisors and employees, intentionally discriminated against Plaintiff on account of sex in violation of the NYSHRL.

48. Such course of conduct unreasonably interfered with Plaintiff's ability to perform her job.

49. Defendants discriminated against Plaintiff in the terms and conditions of her employment on the basis of her sex, including creating a hostile work environment, in violation of the NYSHRL.

50. Defendant Thompson is personally and individually liable under the NYSHRL as an "aider and abettor" of unlawful discrimination.

51. As a direct and proximate result of Defendants' unlawful discriminatory conduct and harassment in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of damages.

## SECOND CAUSE OF ACTION
### Retaliation
### Violation of the NYSHRL
*Against Defendant Piping Rock Club*

52. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

53. Defendant Piping Rock Club has retaliated against Plaintiff because she opposed unlawful discrimination.

54. As a direct and proximate result of Defendant Piping Rock Club's unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of damages.

**THIRD CAUSE OF ACTION**
**Assault and Battery**
**Violation of the Common Law**
*Against Defendant Ronaldo Thompson*

55. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

56. Defendant Ronaldo Thompson engaged in coerced and unwelcomed physical contact, including the forced rape of Plaintiff.

57. As a direct and proximate result of the assaults and batteries alleged herein, Plaintiff sustained physical and emotional damages, including severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of damages.

**FOURTH CAUSE OF ACTION**
**Intentional Infliction of Emotional Distress**
**Violation of the Common Law**
*Against Defendants Piping Rock Club and Ronaldo Thompson*

58. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

59. Defendant Ronaldo Thompson engaged in conduct toward Plaintiff that is extreme and outrageous so as to exceed the bounds of decency in a civilized society.

9

60. Defendant Piping Rock Club's employees, while carrying out their job duties, engaged in conduct toward Plaintiff that is extreme and outrageous so as to exceed the bounds of decency in a civilized society.

61. By his actions and conduct, Defendant Ronaldo Thompson intended to cause or disregarded a substantial probability of causing Plaintiff to suffer severe emotional distress, including, but not limited to, depression, humiliation, embarrassment, anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of damages.

62. By its actions and conduct, Defendant Piping Rock intended to cause or disregarded a substantial probability of causing Plaintiff to suffer severe emotional distress, including, but not limited to, depression, humiliation, embarrassment, anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

63. As a direct and proximate result of the conduct of Defendant Ronaldo Thompson's actions and conduct alleged herein, Plaintiff sustained emotional damages, including severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

64. As a direct and proximate result of the conduct of Defendant Piping Rock Club's actions or conduct alleged herein, Plaintiff sustained emotional damages, including severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of damages.

**DEMAND FOR JURY TRIAL**

65. Plaintiff herein demands a trial by jury for all issues in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Merve Demirer demands that a judgment be entered in her favor and that the Court order and award Plaintiff the following relief against Defendants:

A. A declaratory judgment that the actions, conduct, and practices of Defendants complained of herein violate the laws of the State of New York and common law;

B. An award of damages against Defendants, in an amount to be determined at trial, plus interest, to compensate for all compensatory and punitive damages, including, but not limited to, compensation for Plaintiff's emotional distress;

C. An award of punitive damages in an amount to be determined at trial;

D. Pre-judgment interest on all amounts due;

E. An award of Plaintiff's reasonable attorneys' fees and costs; and

F. Such other and further relief as the Court may deem just and proper.

Dated: Melville, New York
January 9, 2023

Respectfully submitted,

**KESSLER MATURA P.C.**

By: /s/ Troy L. Kessler
        Troy L. Kessler

Troy L. Kessler
Benjamin A. Goldstein
534 Broadhollow Road, Suite 275
Melville, New York 11747
(631) 499-9100
tkessler@kesslermatura.com
bgoldstein@kesslermatura.com

*Attorneys for Plaintiff*